**ORIGINAL**

DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 6 2018

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JACQUELINE CRAIG, Individually and on BEHALF OF MINORS J.H., K.H., AND A.C., and BREA HYMOND, Individually<br>Plaintiffs,<br><br>v.<br><br>CITY OF FORT WORTH, TEXAS, WILLIAM D. MARTIN, and ITAMAR VARDI,<br><br>Defendants | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 17-1020 - A<br><br><br>JURY TRIAL DEMANDED |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT WILLIAM D.
MARTIN'S MOTION FOR SUMMARY JUDGMENT**

---

S. Lee Merritt
State Bar No. PA 314891
**MERRITT LAW FIRM, LLC**
1910 Pacific Ave., Suite 11500
Dallas, TX 75021
888-647-3041
888-339-2050
**ATTORNEY IN CHARGE
FOR PLAINTIFFS**

Daryl K. Washington
State Bar No. 24013714
Fed. Bar No. 612861
**WASHINGTON LAW FIRM, PC**
325 N. St. Paul St.,
Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 – fax
**LEAD COUNSEL
FOR PLAINTIFF**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................................iii

SUMMARY OF PLAINTIFF'S OPPOSITION.......................................................................................1

SUMMARY JUDGMENT PROOF.......................................................................................................3

RELEVANT FACTUAL BACKGROUND ............................................................................................3

PLAINTIFFS' ALLEGATIONS REGARDING MARTIN'S USE OF EXCESSIVE FORCE ...............................4

OBJECTIONS TO OFFICERS' SUMMARY JUDGMENT PROOF ...............................................................8

ARGUMENT & AUTHORITIES .......................................................................................................9

A.    Summary judgment principles ...............................................................................9

B.    Genuine fact disputes preclude resolution of the qualified
      immunity issue at the summary judgment stage......................................................10

      1.    Plaintiffs' version of events is supported by the officers' own
            testimony and must be accepted as true as a matter of law ........................12

      2.    The conflicting inferences to be drawn from the evidence
            create a genuine dispute as to whether Martin's use of
            deadly force was objectively reasonable .......................................................12

      3.    The law was clearly established that Martin's use of deadly
            force was unconstitutional.............................................................................15

C.    Ultimately, the qualified immunity question turns on an issue that
      is the unique province of the factfinder: witness credibility ...................................17

PRAYER .......................................................................................................................................18

CERTIFICATE OF SERVICE..............................................................................................................20

## T<span>ABLE OF</span> A<span>UTHORITIES</span>

**Cases**                                                                       **Page**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,*
  699 F.3d 832 (5th Cir.2012) .................................................................... 9

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................. 9

*Anderson v. McCaleb,*
  480 F. App'x 768, 773 (5th Cir. 2012) ................................................... 9, 13, 16

*Bacque v. Leger,*
  207 F. App'x 374 (5th Cir. 2006) .......................................................... 11

*Bazan ex rel. Bazan v. Hidalgo Cty.,*
  246 F.3d 481 (5th Cir. 2001) ............................................................... 11

*Brumfield v. Hollins,*
  551 F.3d 322 (5th Cir. 2008) ............................................................... 12

*Bush v. Strain,*
  513 F.3d 492 (5th Cir. 2008) ......................................................... 13, 15, 16

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ........................................................................... 9

*Darden v. City of Fort Worth, Tex.,*
  880 F.3d 722 (5th Cir. 2018) ............................................................. 14`

*Goodson v. City of Corpus Christi*
  202 F. 3d 730, 740 (5th Cir. 2000) ...................................................... 13, 16

*Gonzales v. Dallas County,*
  249 F.3d 406 (5th Cir. 2001) ............................................................... 8

*Graham v. Connor,*
  490 U.S. 386 (1989) ...................................................................... 11,13, 16

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .......................................................................... 10

*King v Chide*
   975 F.2d 653,656 (5th Cir. 1992) ........................................................ 11

*Leghart v. Hauk,*
   25 F.Supp.2d 748 (W.D. Tex. 1998)...................................................... 9

*Little v. Liquid Air Corp.,*
   37 F.3d 1069 (5th Cir. 1994) ............................................................... 9

*Lytle v. Bexar Cty., Tex.,*
   560 F.3d 404 (5th Cir. 2009) ......................................................... 15, 18

*Mason v. Lafayette City-Par. Consol. Gov't,*
   806 F.3d 268 (5th Cir. 2015) ............................................................. 12

*Mullenix v. Luna,*
   136 S. Ct. 305 (2015).......................................................................... 15

*Ontiveros v. City of Rosenberg, Tex.,*
   564 F.3d 379 (5th Cir. 2009) ............................................................. 11

*Pearson v. Callahan,*
   555 U.S. 223 (2009)............................................................................ 10

*Procunier v. Navarette,*
   434 U.S. 555 (1978)............................................................................ 10

*Ramirez v. Martinez,*
   716 F.3d 369 (5th Cir. 2013)............................................................... 14

*Reese v. Anderson,*
   926 F.2d 494 (5th Cir. 1991) .............................................................. 11

*Reichle v. Howards,*
   566 U.S. 658 (2012)............................................................................ 15

*Saucier v. Katz,*
   533 U.S. 194 (2001).............................................................. 10, 13, 16

*Scott v. Harris,*
   550 U.S. 372 (2007)..................................................................... 10, 14

iv

*Tarver v. City of Edna,*
    410 F.3d 745 (5th Cir. 2005) ................................................................ 18

*Tolan v. Cotton,*
    134 S. Ct. 1861 (2014) ........................................................................ 12

*Turner v. Knight Transp., Inc.,*
    No. 1:13-CV-02864, 2016 WL 1259891 (W.D. La. March 28, 2016) ........................................ 9

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................. 9

Fed. R. Evid. 104(b) ............................................................................. 8

Fed. R. Evid. 901 ................................................................................. 8

Fed. R. Evid. 901(a) ............................................................................. 8

Fed. R. Evid. 901(b)(1) ......................................................................... 8

Fed. R. Evid. 901(b)(9) ......................................................................... 8

### PLAINTIFFS' RESPONSE TO DEFENDANT MARTIN'S
### MOTION FOR SUMMARY JUDGMENT

Jacqueline Craig ("Craig"), Individually and as next friend of her minor daughters J.H. and K.H. and Brea Hymond ("Hymond"), Individually, Plaintiffs, file this Response to Defendant's William D. Martin's Motion for Summary Judgment (Docs. 44).  It's clear that Plaintiffs' version of the incident differs from how Martin describes it. If one was to believe Martin, it would mean that he can physically assault women and also determine the extent of their injuries as well.

### SUMMARY OF PLAINTIFFS' OPPOSITION

The only means through which this Court can grant summary judgment is by engaging in impermissible credibility determinations.  Several facts are undisputed: (1) Craig, J.H., K.H. and Hymond were unarmed; (2) Craig, J.H., K.H. and Hymond never made any threatening gestures toward Martin or any other person; (3) Craig, J.H., K.H. and Hymond had not committed a penal offense; (4) Craig, J.H., K.H. and Hymond were injured, mentally and physically, as a result of the force used by Martin; and (5) Former  Chief of Police, Joel Fitzgerald, determined that the force used by Martin was not proper.  (Exhibits A and B)  The remaining material facts are hotly disputed.

Martin claims he is entitled to qualified immunity under these facts.  In the process, however, Martin fails to demonstrate that his actions were objectively reasonable.  Rather, Martin engaged in suspicion and surmise in order to justify—after the fact—his treatment of Craig, J.H., K.H. and Hymond.  Martin launched a series of assaults after responding to a 9-1-1 call made by Craig to report Defendant Vardi's

1

assault of her minor son, A.C. (Exhibits A and B). During the process of investigating Defendant Vardi's assault of Craig's minor son, A.C., Martin learned two important things: Craig, J.H., K.H. and Hymond had not committed any crimes and that Craig was the person who reported a crime (Exhibits. A and B). Knowing this, Martin made the decision to use excessive force during his wrongful arrest of Craig[1], J.H., K.H. and Hymond (Exhibits. A and B). Instead of comforting the Plaintiffs, Defendant Martin escalated the entire incident by immediately issuing an insult to Craig regarding her parenting skills. Defendant Martin threatened to arrest Craig, J.H., K.H. and Hymond for no lawful reason. Yet, despite fully complying with the officer's commands, Martin used excessive force during his wrongful arrest of Craig, J.H., K.H. and Hymond causing them to suffer severe pain and injuries. Thus, Craig, J.H., K.H. and Hymond allege that Martin's punching, kicking and slamming them to the ground, was unconstitutional and excessive force for subdued, non-resisting suspects such as them. The actions of Martin caused them to suffer Psychological trauma as well.

Martin never had any objective basis to conclude that Craig, J.H., K.H. and Hymond were an immediately threat to themselves, the officers, or anyone else. Accordingly, when Martin assaulted Craig, J.H., K.H. and Hymond, he was not entitled to qualified immunity.

---

[1] There is no reference that the reason Martin arrested Craig was due to outstanding warrants. Defendant argues this after fact to justify his wrongful arrest of Craig.

2

<u>SUMMARY JUDGMENT PROOF</u>

| Exhibit | Description |
|---------|-------------|
| A | Affidavit of Jacqueline Craig |
| B | Affidavit of Brea Hymond |
| C | Video of Incident |

<u>RELEVANT FACTUAL BACKGROUND</u>

On December 21, 2016, at approximately 3:30 p.m., Craig, J.H., K.H. and Hymond were physically assaulted by Martin, a fact that Fort Worth Chief of Police Fitzgerald agreed with related to Hymond, after Martin arrived to investigate the assault of A.C. by Defendant Itamar Vardi ("Vardi"). Not only were Craig, J.H., K.H. and Hymond assaulted by Martin; they were wrongfully placed under arrest. Craig, J.H., K.H. and Hymond had not committed any penal offenses, never made any threatening gestures, did not attempt to flee, and did not attempt to resist while being handcuffed by Martin. (Exhibits A and B) Yet, despite fully complying with the officer's commands, Martin used excessive force during his wrongful arrest of Craig, J.H., K.H. and Hymond causing them to suffer severe mental and physical pain and injuries. Thus, Craig, J.H., K.H. and Hymond allege that Martin's punching, kicking and slamming a suspect to the ground, was unconstitutional and excessive force for subdued, non-resisting suspects such as Craig, J.H., K.H. and Hymond.

3

<u>PLAINTIFFS' ALLEGATIONS REGARDING MARTIN'S USE OF EXCESSIVE FORCE</u>

In their Original Complaint, J.H., K.H. and Hymond allege the following facts in support of their excessive force claim against Martin:

a)      On December 21, 2016, at approximately 3:30 PM, Plaintiff A.C., then eight-years-old, was walking home from his school bus stop (located near the intersection of Valley Village Drive and Grass Valley Trail Fort Worth, Texas 76123) with his older sister, L.C., a minor.  As they walked east on Valley Village Drive toward their home, A.C. dropped some raisins along the walkway from a bag of mixed snacks.  At or about the previously mentioned timed and place, Defendant, Itamar Vardi, observed A.C. dropping the raisins near his home.  Defendant Vardi approached A.C. and demanded he retrieve the discarded raisins from the walkway. When A.C. refused, Vardi grabbed A.C. by the arm and repeated his command. When A.C. attempted to pull free from Vardi's hold, Vardi intentionally grabbed the minor by the back of his neck causing injury and violently pushed him to the ground pinning him to the concrete near the location on the sidewalk where the raisins had fallen.  Vardi's assault caused A.C. to suffer a cervical sprain to his upper spine.  During the attack, L.C. shouted for Vardi to release her brother from this hold before running to her nearby home on Rock Garden Trail to tell her mother about the assault.  A.C. managed to struggle free from Vardi's grasp and run home as well. (Doc. 1 at 5, ¶ 17).

4

b)    Upon learning about the assault on her son, Plaintiff, Jacqueline Craig, immediately left her home and approached Defendant, Vardi.   Vardi admitted to assaulting her son, stating A.C. had "defied [him]" when commanded to pick up the raisins from the ground.  Craig then called law enforcement to report Vardi's assault on her son.   Craig waited for law enforcement to arrive with several members of her household, including her daughter, then nineteen-year-old, Plaintiff Brea Hymond who began recording the encounter. While waiting for law enforcement to arrive, Jacqueline Craig can be seen in the recording preventing another man from confronting Vardi. She reassured the man that she had contacted police and asked that he allow law enforcement to deal with the assault on her son (Doc. 1 at 6, ¶ 18);

c)    When Defendant Martin arrived to the location of the incident, he spoke with Vardi briefly.   According to Martin's report, Vardi admitted to committing felony assault on the minor stating he "approached the child and grabbed his arm and told him to pick up the trash."  When the child refused, Vardi admitted that he grabbed the child by the back of the neck and demanded that the child pick up the trash. (*Id.* at ¶ 19);

d)    Defendant Martin then turned his attention to Craig who explained that Vardi had assaulted her son.  To that, Martin responded, "Why don't you teach your son not to litter?"  Plaintiff Craig answered that even if he did litter that did not give a stranger the right to grab or choke her son.

5

Martin responded "Why not?"   Craig, upset by this response, stated, "Because it doesn't!"   Defendant Martin informed Craig that if she continued to yell at him she would "piss [him] off and then [he would] take [her] to jail." (Doc. 1 at 6, ¶ 20);

e)   Following this statement, fifteen-year-old J.H. turned to her mother with her back to Martin and attempted to end the encounter.   Without any explanation or justification, Defendant Martin grabbed J.H. from behind and shoved her to the side.   Defendant Martin then grabbed Plaintiff Craig and threw her to the ground, drawing his Taser gun and shoving it into her back while she lay prostrate on the ground. (*Id.* at 7, ¶ 21);

f)   Defendant Martin then violently grabbed Plaintiff Craig's right arm and pulled it behind her back while pointing the Taser gun at K.H. and instructing her to get down on the ground.   As J.H. complied, Martin placed Craig in handcuffs while she lay face down in the street.   He then approached J.H., who was lying on the ground as instructed, and straddled the top of her while grabbing the back of her neck and forcing her head to the concrete.   Without any explanation or justification, Defendant Officer Martin placed J.H. in handcuffs and lifted her from the ground by yanking her arms. (*Id.*);

g)   Defendant Martin then walked Craig and J.H. to his squad car.   Without any justification or explanation, Defendant Martin placed J.H. in the back of his car, where she had difficulty maneuvering into the vehicle with her

6

hands cuffed behind her back.  Defendant Martin grew impatient and shouted "Get in the car!" while kicking J.H.'s legs into the vehicle and slamming the door.  Defendant Martin also placed Craig in the vehicle on the opposite side of J.H. (*Id.* at 7, ¶ 23);;

h)   Plaintiff, K.H., witnessing the assault on her mother and sister, attempted to intervene by placing herself in the path of defendant, Martin in an attempt to block him from any further assault on members of her family. Defendant, Martin, in turn unlawfully struck then fourteen year-old plaintiff, K.H., in the throat. (*Id.* at 7, ¶ 24);

i)   At all relevant times hereto, Plaintiff, Brea Hymond, stood at a safe distance away from defendant, Martin, and, without interfering with the unlawful arrest, recorded the assault using her cellular device. (*Id.* at 8, ¶ 25);

j)   Defendant Martin then, suddenly and without provocation, rushed Plaintiff Brea Hymond, who stood at a safe distance, recording the arrest. Martin handcuffed Hymond's arms behind her back and questioned her about her age.  When she failed to respond suitably, Martin hyper-extended her handcuffed arms by flexing them above her head in a pain-compliance maneuver, which he later described as consistent with the training and procedures he learned at the Fort Worth Police Academy. When other officers arrived, Plaintiff Hymond was placed in the back of a police vehicle. (*Id.* at 8, ¶ 26);

7

k)   Plaintiffs Craig, Hymond and J.H. were taken into police custody. Plaintiff, Craig was charged with failure to ID - fugitive from justice (although she is heard providing proper ID in the recordings available) and resisting arrest (despite the lack of evidence that she resisted at any time). Plaintiff Hymond was unlawfully charged with interference with a peace officer and resisting arrest for her actions in recording the attack. K.H. was transferred to a juvenile detention center where she was later released without being charged with any crime. (*Id.* at 8, ¶ 27);

"There were no struggles or active resistance by Plaintiffs that would indicate" Martin needed to use any force to effectuate the arrest

## OBJECTIONS TO OFFICERS' SUMMARY JUDGMENT PROOF

To be admissible, evidence must be authenticated. Fed. R. Evid. 104(b), 901. Said another way, to rely on any item as evidence—whether a document, weapon, photograph, or audio or video recording—that party must first establish the item's genuineness—*i.e.*, "that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This generally requires the affidavit of a person with knowledge or evidence that the process or system being relied upon produces an accurate result. *See, e.g.*, Fed. R. Evid. 901(b)(1), (9). For video recordings, like the ones Defendant Martin attached to his motion for summary judgment as Exhibit A-2, authentication also requires the proponent to show that the camera functioned properly, that the operator was competent in operating the equipment, and that the recording fairly and accurately represents the scene depicted. *See Turner v. Knight Transp., Inc.*, No. 1:13-CV-02864, 2016 WL 1259891, at *1 (W.D. La. March 28, 2016).

Defendant Martin makes no effort to authenticate any of the videos (Exhibit A-2) attached to his motion for summary judgment. Accordingly, Plaintiffs object to all of these exhibits as inadmissible here.

**ARGUMENT & AUTHORITIES**

**A.     Summary judgment principles.**

The primary purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, granting a request for summary judgment is only proper after the movant presents competent evidence showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Catrett*, 477 U.S. at 323. Only after the moving party satisfies its burden of proof must the non-moving party come forward with specific facts that, taken as true, establish the existence of a genuine issue for trial. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir.2012). The Court then "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." *Leghart v. Hauk*, 25 F.Supp.2d 748, 751 (W.D. Tex. 1998).

Genuine fact disputes are resolved in favor of the nonmovant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "In qualified immunity cases, this usually means adopting (as the Court of Appeals did here) the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). Consequently, a defendant seeking summary

9

judgment on the basis of qualified immunity "must be prepared to concede the best view of the facts to the plaintiff[.]" *Gonzales v. Dallas County*, 249 F.3d 406, 411 (5th Cir. 2001).

**B.    Genuine fact disputes preclude resolution of the qualified immunity issue at the summary judgment stage.**

Martin contends that qualified immunity entitles him to summary judgment.[2] The doctrine of qualified immunity operates to shield "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)).  Assessing a defendant's entitlement to qualified immunity consists of two separate inquiries.

First, courts ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Second, if such a constitutional violation is found, courts determine whether the right was "clearly established" at the time. *Id.*  Although "often appropriate" to answer these two questions sequentially, courts are vested with "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.*

---

[2] See Doc. 44 at 17-19.

Plaintiffs "cannot rest on the pleadings" to survive a qualified immunity challenge; instead, they "must show genuine issues of material fact concerning the reasonableness of the [officer's] conduct." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001). Stated differently, to survive summary judgment, Plaintiffs need only "demonstrate genuine issues of material fact that, *if believed*, established that the officers used excessive force clearly excessive to the need to restrain [Craig, J.H., K.H. and Hymond]." *Bacque v. Leger*, 207 F. App'x 374, 375 (5th Cir. 2006) (emphasis added). If a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *King v. Chide*, 975 F.2d 653, 656 (5th Cir. 1992); *see Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'").

"To negate a defense of qualified immunity and avoid summary judgment, [Plaintiffs] need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

Ultimately, to avoid summary judgment on qualified immunity grounds, Plaintiffs must adduce evidence at least raising a genuine issue of material fact that (1) Martin's conduct "violated an actual constitutional right" of Craig, J.H., K.H. and Hymond, and (2) Martin's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d

322, 326 (5th Cir. 2008).

      **1.**     **Plaintiffs' version of events is supported by the evidence and must be accepted as true as a matter of law.**

As noted above, the Court must accept Plaintiffs' evidence as true. *See, e.g., Mason v. Lafayette City-Par. Consol. Gov't,* 806 F.3d 268, 276 (5th Cir. 2015) ("Additionally, the Supreme Court has recently emphasized that in an excessive-force case on summary judgment, like any other case, a court must accept as true the evidence of the nonmoving party and draw all justifiable inferences in that party's favor.") (citing *Tolan v. Cotton,* 134 S. Ct. 1861, 1863 (2014)). *See also,* Plaintiffs' Exhibits A at 7-23 and B. Simply, Craig, J.H., K.H. and Hymond were unarmed, had not committed a penal offense, was not attempting to flee from the scene, were complying with the commands of Martin and were never a threat to Martin or anyone else. *Id.* Martin knew this. Martin had responded to a 9-1-1 call initiated by Craig. In the process, however, Martin verbally abused Craig, J.H., K.H. and Hymond and escalated the entire incident that resulted in the assault of the Plaintiffs and their subsequent wrongful arrest. *Id.*

The decision to use physical force on Craig, J.H., K.H. and Hymond was simply not reasonable under these circumstances.

      **2.**     **The conflicting inferences to be drawn from the evidence create a genuine dispute as to whether Martin's use of excessive force was objectively reasonable.**

The Supreme Court has long made clear that it is objectively unreasonable for a peace officer to repeatedly strike a non-resisting suspect." 524 F. App'x 69, 81 (5th Cir. 2013) (unpublished) (citing *Anderson v. McCaleb,* 480 F. App'x 768, 773 (5th Cir. 2012);

*Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Although the right to make an arrest " 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' " the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Further, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "calculus of reasonableness" must allow for the reality that "police officers are often forced to make split-second judgments" about a particular situation "in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97. Consequently, under the version of facts this Court must accept as true, Martin's use of excessive force was objectively unreasonable.

Here, Plaintiffs Craig, J.H., K.H. and Hymond, had not committed any penal offenses, were not resisting arrest or attempting to flee when Martin punched and kicked J.H., K.H. and Hymond and violently slammed Craig to the ground. (Exhibits A & B). While the Fourth Amendment's reasonableness test is " 'not capable of precise definition or mechanical application,' the test is clear enough that Martin should have known that he could not punched and kick J.H., K.H. and Hymond and violently and forcefully slam Craig to the ground while they were restrained and subdued. Therefore, Martin has not demonstrated that he is entitled to qualified immunity on Plaintiffs

13

Craig, J.H., K.H. or Hymond's excessive force claims.

The footage Martin relies on is not, as he contend, definitive proof. The video (which is not authenticated) is not like the video evidence in *Scott v. Harris* in which the U.S. Supreme Court held that because the nonmovant's version of the events was "so utterly discredited" by a videotape "that no reasonable jury could have believed him," the court "should have viewed the facts in the light depicted by the videotape," not in a light most favorable to the nonmovant. *Scott,* 550 U.S. at 380-81. Here, the video does not contradict the Plaintiffs' version of events so blatantly that no reasonable jury could believe their version. As such, the video and more importantly, Martin's version of the event, does not alter this Court's obligation to construe the Plaintiffs' version of the facts in the light most favorable to the Plaintiffs. *See Ramirez v. Martinez,* 716 F.3d 369, 374 (5th Cir. 2013); *see also Darden v. City of Fort Worth, Tex.,* 880 F.3d 722, 730 (5th Cir. 2018) (noting that "the standard imposed by the Supreme Court is a demanding one: a court should not discount the moving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account.").

Even the video footage raises serious questions regarding Martin's account. Principally, while he sought compliance from Craig, J.H., K.H. and Hymond, he gave them very little time to do so. Moreover, during the short interaction Martin had with them, none of the Plaintiffs threatened Martin or any other person nor had they committed any crimes. (Exhibits A at 7-23 and B). To accept Martin's version as the only possible version of the facts would be to construe the facts in the light most favorable to him. His credibility is crucial here, and the jury should be allowed to

14

determine whether they believe Martin's version of the events.

Based on the objective facts, particularly when viewed in the light most favorable to the Plaintiffs, Martin lacked probable cause to believe that Craig, J.H., K.H. and Hymond posed a serious and imminent threat of physical harm at the moment he used force on the Plaintiffs. The evidentiary record, viewed under the principles and guidelines governing the summary judgment analysis, demonstrates at least a fact question regarding whether Martin's use of excessive force against Craig, J.H., K.H. and Hymond—unarmed and compliant—was objectively unreasonable.

### 3. The law was clearly established that Martin's use of excessive force was unconstitutional.

Because Martin's use of deadly force was objectively unreasonable, the only means through which he can obtain summary judgment on the basis of qualified immunity is if it was not "clearly established" in the law at the time that Martin's use of force was unconstitutional. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Central to this inquiry is the concept of "fair warning." *Lytle*, 560 F.3d at 417. "While the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Id.* (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

Even so, for over three decades, "[A]t the time of the incident, the law was clearly established in the Fifth Circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force." 524 F. App'x 69, 81 (5th Cir. 2013) (unpublished) (citing *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Although the right to make an arrest " 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' " the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). At no time during Defendant Martin's arrest of Craig, J.H., K.H. and Hymond did they resist, interfere or attempt to flee. It was also clearly established at the time, based on three cases, that psychological injuries can be sufficient to state a Fourth Amendment excessive force claim.[3] Additionally, Martin does not claim that—as a matter of law— "a reasonable police officer could have believed that his decision to use force against Craig, J.H., K.H. and Hymond was lawful."[4] To support this argument, however, Martin provides no evidence and instead relies on the argument of his counsel.

---

[3] The extent of an injury is an element of an excessive force claim that must be clearly established in the second prong of the qualified immunity analysis. The plaintiff's physical injuries in *Dunn* were only bruises, but she suffered substantial psychological injuries, sufficient to demonstrate the violation of a clearly *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996).

[4] Docket No. 31, p. 10.

16

No reasonably trained law enforcement could conclude, based on the information available to Martin at the time he assaulted Craig, J.H., K.H. and Hymond, that such a force was required or necessary."[5] Put otherwise, Martin's conduct was so egregious, a reasonable jury could conclude that Martin was either plainly incompetent or knowingly violated the law. Because this testimony is sufficient to demonstrate that a genuine issue of material fact exists with regard to whether Martin's actions were reasonable, Martin is not entitled to summary judgment on Plaintiffs' excessive-force claim.

In summary, it is undisputed that Craig, J.H., K.H. and Hymond were not resisting, were not attempting to flee, were nor threating to harm Martin or any person when they were physically assaulted by Martin. (Exhibits A at 7-23 and B). Accepting these facts as true, as the Court must, Martin applied excessive force to individuals who had not committed a crime and who posed no immediate threat. The law was clearly established that the use of excessive force under the circumstances Martin confronted is objectively unreasonable.

## C.     Ultimately, the qualified immunity question turns on an issue that is the unique province of the factfinder: witness credibility.

Ultimately, review of the summary judgment evidence reveals competing versions of events substantiated by witness testimony and video footage. Resolution of the qualified immunity therefore necessarily turns on witness credibility determinations. And, in the Fifth Circuit, "[a]ny credibility made between the officers'

---

[5] *Id.*

and [eyewitness's] version of events is inappropriate for summary judgment." *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005). This is consistent with the principle announced by the Supreme Court that "[w]hether a person's actions have risen to a level warranting deadly force is a question of fact best reserved for a jury." *Harris*, 550 U.S. at 395. As the *Lytle* Court explained, because "there are few, if any, bright lines for judging a police officer's use of force," it is a question for the community, not the courts:

> [R]easonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009).

Yet, through his motion, Martin seeks to prevent the community from determining whether his use of excessive force against compliant suspects who had not committed a penal offense was objectively reasonable. In a sense, Martin asks the Court to disregard summary judgment principles and engage in impermissible credibility determinations. The Court should not accept that invitation and insulate Martin's objectively unreasonable use of excessive force in contravention of established law.

## PRAYER

For these reasons, Jacqueline Craig, Individually and as next friend of her minor daughters J.H. and K.H. and Brea Hymond, Individually, respectfully request that this Court denies Defendant Martin's Motion for Summary Judgment (Docs. 43 and 44) in

its entirety.  Plaintiffs further respectfully request all other relief to which they may be entitled.

Respectfully submitted,

Daryl K. Washington
Texas Bar No. 24013714
325 North St. Paul Street, Suite 3950
Dallas, Texas 75201
(214) 880-4883 (phone)
(214) 751-6685 (facsimile)
dwashington@dwashlawfirm.com

S. LEE MERRITT
State Bar No. PA 314891
MERRITT LAW FIRM, LLC
1910 Pacific Ave., Suite 11500
Dallas, TX. 75021
888-647-3041
888-339-2050 -fax
slm@merrittatlaw.com


**ATTORNEYS FOR PLAINTIFFS**

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2018, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this Notice as service of documents by electronic means.

DARYL K. WASHINGTON